**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ALI GARNER,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**SCO COLON; SCO CHAVES; SCO O'BRIEN; STATE OF NEW JERSEY; NEW JERSEY DEPARTMENT OF CORRECTIONS,**<br><br>    **Defendants.** | **Civil Action No. 20-7791 (BRM) (JSA)**<br><br><br><br>**OPINION** |

**JESSICA S. ALLEN, U.S.M.J.**

This matter comes before the Court upon *pro se* Plaintiff Ali Garner's unopposed[1] motion for leave to file an amended complaint. (ECF No. 146). No oral argument was heard. *See* Fed. R. Civ. P. 78(b). Having carefully considered Plaintiff's submission, for the reasons set forth below, and for good cause shown, the motion for leave to file an amended complaint is **DENIED**.

**I.    RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[2]

This case arises out of an alleged physical assault that occurred on November 10, 2017.

---

[1] A review of the official court docket confirms that Defendants did not file any opposition to the motion.

[2] The Court assumes the parties are familiar with the lengthy history of this case. Only the background relevant to the present motion is set forth herein.

(ECF No. 1, Ex. A ¶ 3).  Plaintiff, an inmate incarcerated at East Jersey State Prison, filed his complaint in New Jersey state court on October 15, 2019, alleging violations of his constitutional rights. (*See id.*, ¶¶ 16-21).  Following removal (*see* ECF No. 1), Defendants SCO Jesse Colon, SCO Isac Chaves, SCO Siobhan G. O'Brien, the State of New Jersey, and the New Jersey Department of Corrections (sometimes collectively "Defendants") moved to dismiss the complaint. (ECF No. 3).  On March 21, 2021, the Honorable Brian R. Martinotti, U.S.D.J. granted the motion to dismiss in part.  (ECF Nos. 4 & 5).  Having construed Plaintiff's complaint as claiming civil rights violations, pursuant to 42 U.S.C. §§ 1983 and 1985, District Judge Martinotti dismissed all claims against O'Brien and the state entities and every claim against Colon and Chaves except the excessive force claims.  (ECF Nos. 4-5).  District Judge Martinotti also directed Plaintiff to file an amended complaint on or before April 19, 2021.  (ECF No. 5).  Plaintiff did not do so.

Instead, the case proceeded to discovery.  The parties presented multiple disputes requiring judicial intervention and extensions of the fact discovery deadline.  (*See* ECF Nos. 7, 9, 17-18, 22, 24, 26, 28, 32-35, 37, 41, 51, 56, 61, 63).  On May 11, 2023, the Court issued an order, extending fact discovery one final time until June 20, 2023.  (ECF No. 63).

However, less than one month before the close of fact discovery, Plaintiff filed his first motion for leave to amend on May 26, 2023, seeking to reinstate O'Brien as a defendant and repleading conspiracy and retaliation claims against O'Brien, Colon, and Chaves.  (ECF No. 65). On June 5, 2023, the Court denied the motion without prejudice because Plaintiff did not include a red-lined version of his proposed amendment "indicat[ing] in what respect(s) it differs from the" original complaint. L. Civ. R. 15.1(a)(2).  (ECF No. 67 at 1).  The Court directed Plaintiff to refile his motion by July 5, 2023.  (*Id.* at 2).  He did not do so.

2

Rather, he moved for reconsideration of the June 5th Order. (ECF No. 71). The Court denied reconsideration on September 19, 2023, and granted Plaintiff another opportunity to seek leave to amend by October 19, 2023. (ECF No. 80 at 2-3). Again, Plaintiff did not do so. Instead, on October 3, 2023, he appealed the order denying reconsideration. (ECF No. 86).

District Judge Martinotti denied Plaintiff's appeal on May 1, 2025. (ECF No. 137). Thereafter, with discovery closed, on July 31, 2025, the Court entered a Text Order directing the parties to file any motions for summary judgment by September 30, 2025. (ECF No. 145). Before any party moved, Plaintiff filed the instant motion for leave to amend on August 12, 2025. (ECF No. 146).

## II.     RENEWED MOTION TO AMEND

In his renewed motion, Plaintiff contends that he did not "amend the Complaint any sooner because he" was "bounced from prison to prison" after the alleged assault and could not "find a prison paralegal" to help him prosecute this case amidst the transfers. (*Id.*) With the instant motion, Plaintiff submitted a new red-lined proposed amended complaint ("PAC"). (Proposed Am. Compl.; ECF No. 146, Ex. B). Plaintiff claims the PAC cures the defects in his original Sections 1983 and 1985 conspiracy and retaliation claims against O'Brien, Colon, and Chaves. (*See* ECF No. 146).

Pertinent to this motion, the PAC also alleges that Plaintiff "exhausted all available administrative remedies" within the state prisoner grievance system. (Proposed Am. Compl., ¶ 7). Specifically, it alleges that Plaintiff "requested a polygraph test," "submitted paper-form grievances," and requested a "confrontation with" O'Brien, Colon, and Chaves after he was transferred from East Jersey State Prison to Northern State Prison. (*Id.*, ¶ 18). Northern State Prison staff allegedly refused the polygraph request and ignored the paper grievances, but granted

3

the confrontation. (*Id.*) According to Plaintiff, the confrontation "took approximately thirty days," during which he suffered numerous physical and emotional injuries while confined "in administrative segregation" without outdoor "access to the prison yard." (*Id.*, ¶ 19). The PAC further alleges that Plaintiff submitted additional grievances about the alleged 2017 assault after he was transferred a second time to New Jersey State Prison, where he is currently confined. (*Id.*, ¶ 20). New Jersey State Prison allegedly ignored the paper grievances but referred his electronic grievances to the Special Investigation Division, which Plaintiff found "satisfactory." (*Id.*)

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a), "a complaint may be amended once as a matter of right and afterward by leave of the court," *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984), or with the opposing party's written consent, Fed. R. Civ. P. 15(a)(2). Courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This mandate encompasses a broad range of equitable factors, including whether there is (1) undue delay; (2) bad faith, (3) prejudice, (4) failure to cure deficiencies through previous amendments; or (5) futility of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1964); *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006). Ultimately, the decision to grant or deny leave rests in the sound discretion of the Court. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331 (1971).

## IV. ANALYSIS

### A. Undue Delay

When considering delay in the context of Rule 15, "the mere passage of time does not require that a motion to amend a complaint be denied . . . [i]n fact, delay alone is an insufficient ground to deny leave to amend." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273

(3d Cir. 2001) (citing *Adams*, 739 F.2d at 868). "The district court has discretion to deny the request only if the plaintiff's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) (citing *Adams,* 739 F.3d at 864). Delay in seeking leave to amend may become "undue" and "thereby create[] grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend." *Id.* at 266 (citing *Cureton*, 252 F.3d at 273). Thus, as the Third Circuit has noted, the question of undue delay requires the Court to focus on the moving party's "reasons for not amending sooner." *Id*. (quoting *Cureton*, 252 F.3d at 273). The Court then must balance those stated reasons "against the burden of delay on the [] Court." *Id.* (citing *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 520 (3d Cir. 1988)).

The Third Circuit has repeatedly affirmed the denial of motions to amend made after lengthy periods of delay where the amendment would cause prejudice to the Court or additional delay in the proceedings. *E.g., CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 629-30 (3d Cir. 2013) (affirming denial of leave to amend where the plaintiff sought amendment more than three years after filing its complaint and provided "no good reason" for its delay) (collecting cases); *Berger v. Edgewater Steel Corp.*, 911 F.2d 911, 924 (3d Cir. 1990) (affirming denial of leave to amend sought more than four months after information supporting amendment was available, after lengthy discovery period, and when amendment would inject new issues and delay the case); *Averbach v. Rival Mfg. Corp.*, 879 F.2d 1196, 1203 (3d Cir. 1989) (affirming denial of leave to amend when motion was made after months of unexplained delay and on eve of close of discovery and trial).

On this record, the Court cannot discern a reasonable basis for waiting two years before renewing his motion to amend the complaint let alone until after discovery closed and the Court set a summary judgment motion briefing schedule. To the contrary, the Court finds that Plaintiff "failed to take advantage of" the "numerous opportunities" previously given "to correct any deficiencies in" his original complaint. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). The case docket confirms that the Court granted Plaintiff leave to amend three times, beginning in 2021. (ECF Nos. 5, 67 at 2, 80 at 2-3). Each time, Plaintiff did not file a proposed amendment including the proposed changes. Instead, he sought reconsideration of this Court's decision and appealed same. (*See* ECF Nos. 71, 86).

Plaintiff attempts to justify his delay by claiming that his prison transfers prevented him from obtaining assistance from an inmate paralegal. (ECF No. 146). The Court finds this explanation does not justify his delay in seeking to amend. Although Plaintiff is free to consult inmate paralegals, he must still timely prosecute his own case. Plaintiff cites no authority, and the Court has found none, to support his position that his inability to find an inmate paralegal excuses his delay. (*See id.*) As a pro se litigant, Plaintiff alone is responsible for his choices, and he must now live with the consequences. *See Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008) (holding pro se plaintiffs "solely responsible for the progress of [their] case" and therefore "personally responsible for delays").

Further, granting leave at this stage of the litigation would place an unwarranted burden on the Court. During the past five years, the Court and the parties have expended significant time and resources on this case. (*See, e.g.*, ECF Nos. 4-5, 7, 9, 17-18, 22, 24, 26, 32-35, 37, 41, 51, 56, 61, 63, 93, 97, 99-100, 102, 105, 112, 122, 137). The Court has given the parties fulsome opportunity to conduct discovery. Allowing the amendment to reinstate previously dismissed legal claims and

a third defendant, O'Brien, (*see* ECF No. 146), would necessitate reopening discovery and place a burden of delay on the Court. In other words, the amendment would "send the court" down another long road "of substantial discovery and motions." *Bjorgung*, 550 F.3d at 267. This outcome would extend litigation well into the future and frustrate "the Court's effort to move this case toward an efficient resolution on the merits." *IQVIA Inc. v. Veeva Sys.*, 2022 U.S. Dist. LEXIS 5949, at *13 (D.N.J. Jan. 12, 2022).

In sum, the decision to grant or deny leave to amend a pleading is ultimately a matter of discretion. *Zenith Radio Corp.*, 401 U.S. at 331. The Court finds that Plaintiff has significantly delayed, without cogent reason, in seeking leave to amend. Further, the proposed amendment would burden the Court and delay resolution of this protracted case. Accordingly, the Court finds that the motion was brought after undue delay. Therefore, the Court, in its discretion, **DENIES** the motion to amend on this basis.

### B. Futility

District courts may deny leave to amend based on undue delay alone. *Phillips v. Borough of Keyport*, 179 F.R.D. 140, 144 (D.N.J. 1998). However, as explained below, the Court finds that denial is also appropriate on futility grounds.

Futility follows "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). A proposed amendment is futile when it "would [still] fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). In other words, the court may deny leave to amend if "the amendment would not withstand a motion to dismiss." *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983).

Based on its review of the PAC, the Court finds that Plaintiff fails to state a cognizable claim pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, and thus the amendment is futile. Under the PLRA, prisoners cannot sue in federal court "with respect to prison conditions" until they exhaust all available "administrative remedies." 42 U.S.C. § 1997e(a). Although Plaintiff's unopposed motion does not argue[3] exhaustion, the Court may *sua sponte* raise this issue consistent with the PLRA. The PLRA expressly allows the Court to dismiss a civil action "on its own motion" if the plaintiff "fails to state a claim upon which relief can be granted." 42 U.S.C. § 1997e(c)(1); *Booth v. Churner*, 206 F.3d 289, 292-93 (3d Cir. 2000), *aff'd*, 532 U.S. 731 (2001). Moreover, the Court has "inherent authority to dismiss claims *sua sponte* for failure to state a claim upon which relief may be granted." *Worster-Sims v. Tropicana Entm't, Inc.*, 46 F. Supp. 3d 513, 517 (D.N.J. 2014) (quoting *Xu v. Walsh*, 2014 U.S. Dist. LEXIS 123732, at *3-4 (D.N.J. Sept. 14, 2014)); *accord Bintliff-Ritchie v. Am. Reinsurance Co.*, 285 F. App'x 940, 943 (3d Cir. 2008).

To satisfy the exhaustion requirement, a prisoner must "properly present[] his or her claims through one 'complete round'" of his or her prison's "established" grievance process, pursuant to the prison system's own "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-92 (2006) (citations omitted). "[T]he prison's requirements" establish "the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate must substantially comply with the prison's "administrative remedy scheme." *Nyhuis v. Reno*, 204 F.3d 65, 77-78 (3d Cir. 2000). Substantial compliance requires the prisoner to "avail[] [themselves] of every

---

[3] The Court deems the PAC's standalone statement that "Plaintiff exhausted all available administrative remedies" (Proposed Am. Compl., ¶ 7) to be a "legal conclusion couched as a factual allegation," which it is "not bound to accept as true." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

process at every turn" until "there is no further process available to [them] within the grievance system." *Spruill v. Gillis*, 372 F.3d 218, 227-28 (3d Cir. 2004). "[A]n untimely or otherwise procedurally defective administrative grievance or appeal" does not qualify. *Bakhtiari v. Spaulding*, 779 F. App'x 129, 132 (3d Cir. 2019). And the prisoner must "properly" exhaust all appeals before filing their lawsuit. *See Nyhuis*, 204 F.3d at 78; *Spruill*, 372 F.3d at 222.

Because Plaintiff is a state prisoner, he must follow New Jersey's Inmate Remedy System procedures. A New Jersey inmate must file a formal grievance in writing using one of two specified forms. N.J.A.C. § 10A:1-4.4(c). Based on which form the prisoner uses, correctional facility staff must then "review and respond to" the grievance within either fifteen or thirty calendar days, "unless the request is determined to be an urgent request or a request is determined to require further deliberation." N.J.A.C. § 10A:1-4.5(d). After receiving a response, inmates may appeal any adverse outcome to the prison facility's chief administrator. N.J.A.C. §§ 10A:1-4.6(b), (d). Once such an appeal is filed, the chief prison administrator must decide it "within ten business days of receipt." N.J.A.C. § 10A:1-4.6(c). That decision constitutes "the final" decision "of the New Jersey Department of Corrections." N.J.A.C. § 10A:1-4.6(d). The prisoner cannot sue until they receive this final decision. *Baskerville v. Jackson*, 2021 U.S. Dist. LEXIS 78257, at *10 (D.N.J. Apr. 23, 2021).

Strictly speaking, the exhaustion requirement is an affirmative defense, not a pleading requirement; the PLRA does not require prisoners "to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. However, "where a prisoner's failure to exhaust" all available administrative remedies is readily "apparent from the face of the complaint," the "court may dismiss it on that basis." *Talley v. Clark*, 111 F.4th 255, 264 (3d Cir. 2024) (citation omitted).

In applying that standard, the Court finds the reasoning in *Mays v. Untig*, 2010 U.S. Dist. LEXIS 22826 (D.N.J. Mar. 12, 2010), instructive.

In *Mays*, the district court found no sign from the proposed amendment that the plaintiff exhausted all available administrative remedies because he "fail[ed] to state conclusively that [his] grievances pertained to his failure to protect [lawsuit]," "provide[d] scant details about the contents of the grievances," and did "not allege that he ever attempted to" appeal prison authorities' responses "when he was dissatisfied with the results." *Id.* at *7-9. Based on these deficiencies, the court deemed the proposed amendment futile. *Id.* at *10; *accord Baskerville*, 2021 U.S. Dist. LEXIS 78257, at *9 (dismissal where the plaintiff "did not file an appeal" to "any of [his] grievances").

The Court applies the same reasoning here and thus finds from the face of the PAC that Plaintiff did not properly exhaust all Inmate Remedy System steps. In the PAC, he alleges that Northern State Prison denied his "request for a polygraph test." (Proposed Am. Compl., ¶ 18). However, he does not allege whether he appealed this denial. Plaintiff also alleges that Northern State Prison ignored his "paper-form grievances complaining about beating and [being] falsely accused of assaulting Officer Colon." (*Id.*) However, he does not state when he submitted these grievances or when the prison was required to respond to them.

Further, he alleges that he submitted additional paper and electronic "inquiries and grievances" after he was transferred to New Jersey State Prison. (*Id.*, ¶ 20). However, he does not say when he submitted them or what they contained. While he alleges that prison staff told him that the Special Investigation Division would investigate his allegations, (*id.*), he does not say how those investigations concluded or what the investigators found. Nor does he indicate that he ever appealed from any unfavorable or inaccurate findings.

Finally, the Court finds nothing in the PAC to suggest that Plaintiff's grievances contained the same factual allegations that underlie this lawsuit. Plaintiff alleges that several of his injuries arose from spending time "in administrative segregation" while the prison investigated the disciplinary charges that O'Brien, Colon, and Chaves filed against him. (*Id.*, ¶ 19). But it is not clear if any of his grievances discussed these injuries, as opposed to those from the initial 2017 physical assault. (*See id.*).

Indeed, it is not even clear how, or if, Plaintiff's grievances delineate his respective allegations against O'Brien, Colon, and Chaves. At most, the PAC alleges that Plaintiff submitted grievances to Northern State Prison "about being beat[en] and falsely accused of assaulting Officer Colon." (*Id.*, ¶ 18). To reinstate O'Brien as a defendant and restore his conspiracy and retaliation claims, Plaintiff must have already raised the facts underlying each claim against each person in his prison grievances. *See, e.g.*, *Thompson v. Aviles (In re Thompson)*, 2007 U.S. Dist. LEXIS 2068, at *5 (D.N.J. Jan. 11, 2007) (dismissing the complaint when none of the plaintiff's eight grievances raised the specific cause of injury alleged in his federal lawsuit). Because he does not address whether he timely did so before filing this lawsuit, the Court finds his proposed amendment futile.

In light of the foregoing, the Court determines that the PAC does not state a cognizable claim that can proceed in federal court. *See* 42 U.S.C. § 1997e(a). Therefore, in its discretion, the Court **DENIES** leave to amend on this additional basis. Because the Court finds the proposed amendment is futile and follows undue delay, it need not address whether the PAC substantively cures the pleading defects identified in District Judge Martinotti's Order and Opinion dismissing Plaintiff's original conspiracy and retaliation claims against O'Brien, Colon, and Chaves. (*See* ECF Nos. 4-5).

## IV. <u>DECISION</u>

For the reasons set forth above, Plaintiff's motion for leave to file an amended complaint (ECF No. 146) is **DENIED**. An appropriate Order will be entered.

s/Jessica S. Allen_____
**Hon. Jessica S. Allen**
**United States Magistrate Judge**

**Dated: January 6, 2026**

cc: Hon. Brian R. Martinotti, U.S.D.J.